UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00072-HBB

TERESA G.[1]                                                          PLAINTIFF

V.

KILOLO KIJAKAZI, ACTING COMMISSIONER[2]
SOCIAL SECURITY ADMINISTRATION                                      DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

## BACKGROUND

Before the Court is the complaint (DN 1) of Teresa G. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff (DN 13) and Defendant (DN 21) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED.**

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9).   By Order entered August 24, 2021 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1    Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

2    Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Insurance Benefits on March 3,[3] 2016 (Tr.  29, 99-100, 114-15, 137).   Plaintiff alleges to have become disabled on March 2, 2016, as a result of 8-9 bulging discs in neck and back, irregular heartbeat, depression, headaches, back pain, neck pain, arm pain, leg pain, fibromyalgia, and numbness bilateral legs (Tr. 16, 100-01, 115, 443).   The claim was initially denied on November 23, 2016,[4] and again upon reconsideration on March 15, 2017[5] (Tr. 99, 112, 114, 127, 137).   Thereafter, on May 10, 2017, Plaintiff filed a written request for a hearing before an administrative law judge (Tr. 137, 170-72).

Administrative Law Judge John M. Dowling conducted a video hearing from St. Louis, Missouri on April 19, 2018 (Tr. 77-79, 137).   Plaintiff was present and was represented by her attorney Mary Burchett-Bower, both of whom appeared by video from Bowling Green, Kentucky (Id.).   Celena Earl testified by telephone as an impartial vocational expert (Id.).   On September 4, 2018, ALJ Dowling rendered an unfavorable decision pursuant to the five-step sequential process (Tr. 145-55).   ALJ Dowling found that Plaintiff was not disabled from March 2, 2016, the alleged onset date, through the date of the decision because she was capable of performing her past relevant work as an order clerk, which did not require performance of work-related activities precluded by the residual functional capacity finding (Tr. 145).

---

3    An application in the record shows a protective filing date of May 10, 2016 (Tr. 347-48).   However, both parties list the protective application date as March 3, 2016 (DN 13) (citing Tr. 99, 114); (DN 21) (citing Tr. 100-01, 115-16).   Moreover, the decisions in the record also list the application date as March 3, 2016 (Tr. 29, 99-100, 114-15, 137).   Thus, the Court will use the March 3 date.

4    The ALJ's first opinion listed the initial denial date as November 29, 2016 (Tr. 137).   The Disability Determination and Transmittal document and the date accompanying the Disability Adjudicator/Examiner's signature lists the date as November 23, 2016 (Tr. 99, 112).   Thus, the Court will use November 23 date.

5    Like above, the opinion listed the reconsideration denial date as March 21, 2017 (Tr. 137).   The Disability Determination and Transmittal document and the Disability Adjudicator/Examiner's signature lists the date as March 15, 2017 (Tr. 114, 127).   Thus, the Court will use March 15 date.

Plaintiff timely filed a request for the Appeals Council to review the decision (Tr. 285-88). On February 10, 2020, the Appeals Council reviewed the determination (Tr. 129-32). The Council vacated the decision and remanded the matter back to an Administrative Law Judge for resolution of two issues, consideration of additional evidence, and further evaluation of Plaintiff's mental impairments and maximum RFC (Id.).

Administrative Law Judge Steven Collins ("ALJ") conducted a telephone hearing[6] on June 17, 2020, from Louisville, Kentucky (Tr. 16, 38-42). Plaintiff was present on the line with her attorney Mary Burchett-Bower (Id.). Kathleen Robbins testified as a vocational expert (Id.).

On August 5, 2020, the ALJ rendered a new decision pursuant to the five-step sequential process which found that Plaintiff was not disabled from March 2, 2016, through the date of the decision (Tr. 15-29). At the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 2, 2016, the alleged onset date (Tr. 18). At the second step, the ALJ determined Plaintiff has two severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine, and degenerative joint disease (Id.). Plaintiff's gastroesophageal reflux disease (GERD), depression, and anxiety were found to be nonsevere (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 21).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), except for the following limitations: Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry up to ten pounds; can sit for about six hours in an eight-hour workday and stand and/or walk about six

---

6   The hearing was conducted by telephone as a response to the emergence of Covid-19 (Tr. 16, 40-41).

hours in an eight-hour workday; can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, crouch, and crawl; should never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to extreme cold, excessive vibrations, and dangerous machinery and unprotected heights (Tr. 21-22).   The ALJ found Plaintiff is capable of performing her past relevant work as a social services aide, as the work does not require the performance of work-related activities precluded by the above RFC (Tr. 28).

Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from March 2, 2016, the alleged onset date, through the date of the decision, August 5, 2020 (Tr. 29).   Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 341-44).   The Appeals Council denied the request (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir. 1993).

### The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. § 401 *et seq*.   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. § 404.1520.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)    Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)    Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

## Challenge to Finding No. 5: RFC & Medical Evidence

1.  Arguments of the Parties

Plaintiff presents three arguments against the ALJ's RFC determination (DN 13, pp. 3-7). First, Plaintiff asserts that "[t]he ALJ fail[ed] to properly consider and address that the State agency medical consultants did not review important evidence of record" (DN 13, p. 4). Specifically, Plaintiff points to the 2018 x-rays; the August 29, 2018, lumbar spine MRI; the October 16, 2018, MRI from Dr. Phillip Singer; the April 2019 left knee MRI; and evidence documenting positive bilateral SLR testing (Id. at pp. 4-5) (citing Tr. 26, 1018, 1020, 1046, 1049). Second, Plaintiff alleges that her treating physicians' evidence supporting functional limitations were not considered (Id. at pp. 6-7). Finally, Plaintiff contends the ALJ's RFC determination "lacks explanation to reconcile the ability to only occasionally balance but stand and walk for up to two-thirds of the workday" (Id. at p. 7). To support this claim, Plaintiff cites to Social Security Ruling ("SSR") 96-9p to state that "there may be significant erosion of the occupations base" if balance is limited (Id.). Plaintiff concedes there is "no requirement that the RFC assessment must be supported by an opinion of record" but also alleges that the determination does not meet the requisite "substantial evidence" standard (Id. at p. 5). Thus, remand is necessary (Id. at p. 7).

In contrast, Defendant posits that the ALJ "conducted a thorough analysis of the record and reasonably concluded that Plaintiff had the physical RFC to perform a restricted range of light work except with additional postural and environmental limitations" (DN 21, p. 4).   Defendant argues that the ALJ "appropriately considered the opinions of the state agency physicians consistent with the regulations and reasonably concluded that the RFC accounted for Plaintiff's physical conditions" (Id. at p. 5).   While the ALJ does have to evaluate a variety of factors when considering the weight afforded to the reviewing physicians, Defendant asserts "the ALJ is not required to perform an exhaustive, step-by-step analysis of each factor in weighing the opinions" (Id. at p. 6) (citations omitted).   Thus, "[t]he ALJ reasonably gave partial weight to Dr. Reed's and Dr. Irlandez's opinions based on the record evidence" and appropriately "filled in any gaps by considering the subsequent records dated after the state agency assessments" (Id. at pp. 6-8).   Moreover, Defendant states that "the ALJ was not required to directly discuss or cite every single piece of evidence in weighing the opinion evidence" (Id.) (citation omitted).   As for Plaintiff's arguments about her treating physicians' evidence, Defendant classifies the claim as "meritless" as "[a] fair reading of the ALJ's decision shows that he provided a rationale with specific references to evidence of record" (Id. at p. 10).   Finally, Defendant discusses how SSR 96-9p pertains to an RFC assessment for a person with less than a full range of sedentary work, whereas Plaintiff was limited to a range of light work (Id. at p. 12).

    2.   Discussion

    The RFC finding is an administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC).   An administrative law judge makes this

finding based on a consideration of medical opinions and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Medical opinions expressing functional limitations imposed by a claimant's physical or mental impairments can be generated by treating physicians or psychologists, consultative examining physicians or psychologists, state agency physicians or psychologists who reviewed the claimant's medical records, or medical experts who testify at hearings before an Administrative Law Judge.   20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1513a(b), 404.1527, 404.1545(a)(3).   Thus, in making the RFC finding an administrative law judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1527(c), 404.1529(a).   While opinions from treating and examining sources are considered on the issue of residual functional capacity, the ALJ is responsible for making that determination.   20 C.F.R. § 404.1527(d).

As Plaintiff filed her application prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply to the ALJ's assignment of weight to the medical opinions in the record.   The regulations require administrative law judges to evaluate every medical opinion in the record.   20 C.F.R. § 404.1527(c).   The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. Id.   If controlling weight is not assigned to the treating source's opinion, the administrative law judge must consider the paragraphs (c)(1)-(6) factors in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source.   Id.

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"),

8

*id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

Turning to the ALJ's decision, the ALJ awarded the opinions of Drs. Jack Reed and Diosdado Irlandez—the State agency medical consultants—"partial weight" (Tr. 26). The limitations proffered in their opinions, according to the ALJ, are "consistent with the diagnostic imaging in the record" and "with physical examinations where the claimant consistently had normal strength and sensation" (Id.). The ALJ listed a myriad of diagnostic imaging and physical examinations which he states the opinions are consistent with (Id.) (citing Tr. 588, 611, 668, 811, 813, 837, 852, 978, 1017, 1046, 1193). Specifically, the ALJ lists the January 2015 lumbar spine MRI, February 2015 cervical spine MRI, March 2015 CT scan of her thoracic spine, January 2018 lumbar spine x-ray, February 2018 cervical spine x-ray, February 2018 thoracic spine x-ray, August 2018 lumbar spine MRI, and April 2019 left knee MRI (Id.). The ALJ limited the weight afforded as Drs. Reed and Irlandez did not have the opportunity to examine Plaintiff (Tr. 26-27).

As for Plaintiff's argument, while the ALJ may not have *explicitly* stated that Drs. Reed and Irlandez did not review the 2018 x-rays, August 2018 MRI, or April 2019 MRI, the fact that the evaluations were conducted in October 2016 and March 2017 (Tr. 108-10, 124-26) would make consideration impossible. However, the ALJ did expressly note that the findings were consistent with more current imaging and even included more restrictive limitations based on relevant medical evidence and other medical opinions in the record (Tr. 21-28, 108-10, 124-26).[7]

The Sixth Circuit has since held that "an ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater

---

7   Contrary to Plaintiff's brief argument to the effect (DN 13, p. 5), this inclusion was not a lay person's assignment of limitations based upon his review of the medical data but rather the ALJ complying with the applicable regulations in crafting an RFC based upon the record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).

weight to an opinion that is not based on the full record." Spicer v. Comm'r of Soc. Sec., 651 F.

App'x 491, 493-94 (6th Cir. 2016) (citing Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th

Cir. 2009); *see also* Nalley v. Kijakazi, No. 3:20-CV-00472-RSE, 2021 U.S. Dist. LEXIS 226669,

at *10 (W.D. Ky. Nov. 23, 2021); McGrew v. Comm'r of Soc. Sec., 343 F. App'x 26, 31 (6th Cir.

2009). Nor is it *per se* error for an ALJ to solely rely on opinions of non-examining physicians

in determining a claimant's RFC. *See* SSR 17-2 (state agency physicians are "highly qualified

medical sources who are also experts in the evaluation of medical issues in disability claims under

the Act."); Van Pelt v. Comm'r of Soc. Sec., No. 1:19 CV 2844, 2020 U.S. Dist. LEXIS 244781,

at *31-33 (N.D. Ohio Dec. 30, 2020) (finding that so long as an ALJ's ultimate decision is

supported by substantial evidence, an ALJ may rely (in part) on outdated state agency opinions

without obtaining updated opinion evidence) (citing Shepard v. Comm'r of Soc. Sec., 705 F. App'x

435, 442-43 (6th Cir. 2017); McGrew, 343 F. App'x at 29-30).

It is clear that the ALJ, in this case, considered post-dated medical evidence. *See* Spicer,

651 F. App'x at 493-94; McGrew, 242 F. App'x at 32. The ALJ's RFC determination contains a

detailed recitation and discussion on Plaintiff's visits with various providers, as well as the

diagnostic imaging and medical documentation regarding her impairments (Tr. 21-28). Some of

these documents and images post-date Drs. Reed's and Irlandez's decisions by one-to-two years

and were considered by the ALJ. Thus, Plaintiff argument is unpersuasive.

Next, when looking to the opinions of Dr. Ashley Norris, the ALJ awarded her opinion

"great weight" (Tr. 27-28). Dr. Norris did not complete the functional limitation portion of the

report (Tr. 1166-69), so the ALJ only considered the mental limitation aspects (Tr. 27-28). The

ALJ, at length, listed the limitations opined by Dr. Norris (Id.). Plaintiff's argument stems from

Dr. Norris' listing of diagnoses and symptoms, which Plaintiff alleges the ALJ failed to consider

(DN 13, p. 6) (citing Tr. 1166).   However, the ALJ explicitly noted that he read and considered the opinion and extensively detailed the findings for the completed sections of the statement (Tr. 27-28).   Moreover, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."   Simons v. Barnhart, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)).   While Plaintiff may have wanted additional discussion on Dr. Norris' opinion, the ALJ's analysis comports with applicable law.   Thus, Plaintiff's argument is unpersuasive.

Similar to the last argument, Plaintiff alleges error in the handling of Dr. Phillip Singer's opinion (DN 21, pp. 11-12).   Plaintiff, in essence, claims that the ALJ did not adequately address or consider the functional limitations found in Dr. Singer's statements (Id.).   In the ALJ's opinion, Plaintiff's visit to Dr. Singer in October 2018 was addressed (Tr. 25).   The ALJ discussed Plaintiff's antalgic gait, tenderness in the thoracic spine, and positive straight leg raises, in addition to her having steady balance and coordination, full range of motion of the thoracic spine with normal strength, normal toe/heel walk, and an unrestricted range of motion in the left leg without instability or loss of strength (Id.) (citing Tr. 1017-18).   The ALJ also recounted Plaintiff "demonstrating signs and symptoms consistent with the L2-3 disc herniation . . . [and] found [Plaintiff] to be a candidate for surgical intervention specifically a limited hemilaminectomy discectomy at L2-3 on the left" (Id.) (citing Tr. 1020).   Like above, Plaintiff may have wanted a more detailed analysis, but the ALJ "is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."   Simons, 114 F. App'x at 733.   The ALJ detailed many of Dr. Singer's findings and considered the entirety of the statement when crafting the RFC.   Thus, Plaintiff's argument is unpersuasive.

Finally, Plaintiff disputes the balancing and stand/walk limitations and points to SSR 96-9p (DN 21, p. 7).   However, as Defendant correctly points out, SSR 96-9p pertains to RFC findings of less than a full range of sedentary work.   As discussed above, the ALJ found Plaintiff to have an RFC of light work with some additional limitations (Tr. 21-22).   Based upon the above analysis, Plaintiff has not presented a persuasive argument to merit setting aside the ALJ's RFC finding; thus, SSR 96-9p is inapplicable to the present case.   As Plaintiff presents no other facts or law to support an argument to this aspect, this argument fails.

In conclusion, Plaintiff's arguments to Finding No. 5 are unpersuasive.   The ALJ's RFC determination, and the related findings regarding the medical opinions and documents, is supported by substantial evidence and comports with applicable law.   Therefore, Plaintiff is awarded no relief here.

Challenge to Finding No. 6: Past Relevant Work

1.   Arguments of the Parties

Plaintiff also maintains two arguments against the past relevant work finding (DN 13, pp. 7-9).   First, Plaintiff draws upon her previous argument that the RFC finding is not supported by substantial evidence; thus, the finding about whether Plaintiff could return to past work is "flawed" and not supported by substantial evidence (Id. at p. 7).   Alternatively, Plaintiff argues that she "lacks past relevant work" (Id. at p. 8).   Plaintiff produces pay records, which submitted to the Appeals Council and attached to her Fact and Law Summary, which purportedly show that "earnings were not at a sustained SGA level" and "[i]n fact, earnings were not at a SGA level for more than three consecutive months" (Id.) (citing Tr. 568; DN 13-1).   Plaintiff seeks remand for consideration of this material, as it is allegedly "new, material, and good cause exists for failure to introduce the evidence at the administrative level" (Id.).   Plaintiff alleges it is new "as it was not

13

before the ALJ at the time of decision[;]" it is material as there is a reasonable probability that the decision maker would find the past work was not performed at an SGA level, leading to Medical Vocational Rule 202.04 directing a finding of "disabled;" and good cause exists because "Plaintiff's counsel did not anticipate the finding based on the amount of income and the varying number of pay periods per month[ and] believed that the Social Security Administration had access to quarterly wage information by running a new hire inquiry" (Id. at pp. 8-9).

Conversely, Defendant views first argument as insufficient and "should be waived" (DN 21, p. 13) (citation omitted).   As for the second argument, "the ALJ's finding was appropriate and consistent with the regulations" (Id. at p. 14).   After detailing the applicable regulations, Defendant maintains that the ALJ properly and appropriately found that Plaintiff "achieved substantial gainful activity in 2011 by earning $1,000.00 or more per month" (Id. at p. 15). "Plaintiff cannot show any error in the ALJ's calculation of her monthly average income because [the ALJ's method] is precisely what the regulations and policy required . . ." (Id. at pp. 15-16). As for the pay records, Defendant argues they are "not appropriately before this Court" and insufficient for remand, as the documents existed at the time of the hearing, thus making them not "new;" the Appeals Council did not find them to be "material;" and Plaintiff's explanation for not presenting the documents does not rise to the level of "good cause" (Id. at pp. 16-19).

2.   Discussion

First, in regard to Plaintiff's argument about the ALJ's finding about past relevant work as it relates to the RFC finding, the Court has previously found that the ALJ's RFC determination is supported by substantial evidence and comports with applicable law.   This directly undercuts any argument proffered by Plaintiff.   It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."

United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006).

Second, Plaintiff seeks to include additional pay records to support an argument that her earnings were not at a sustained substantial gainful activity level (DN 13-1).   Plaintiff did not proffer these documents to the ALJ but did proffer them to the Appeals Council (Tr. 2).   The Appeals Council found that the documents "do[] not show a reasonable probability that it would change the outcome of the decision" (Id.).   When the Appeals Council considers new evidence, but declines review, the district court cannot consider the new evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner.   Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).   This approach makes sense because the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.   *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline, 96 F.3d at 148; Cotton, 2 F.3d at 695-96.   Thus, Plaintiff seeks a remand "for consideration of new and material evidence" (DN 13, p. 8).

"A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . ." Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006).   The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence six-remand)."   Faucher v. Sec'y of Health & Hum. Servs., 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).   Most

applicable, under sentence six of 42 U.S.C. § 405(g), the Court does not address the correctness of the administrative decision.   Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991), Hollon, 447 F.3d at 483.   "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding."   Melkonyan, 501 U.S. at 98.   The party seeking this type of remand has the burden of demonstrating that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"   42 U.S.C. § 405(g); see also, Cline, 96 F.3d at 148; Faucher, 17 F.3d at 174-75.

The Supreme Court of the United States has explained that evidence is "new" only if it was "not in existence or available to the claimant at the time of *the administrative proceeding*." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); see Melkonyan, 501 U.S. at 98 (indicating that evidence is "new" if it was not available to the claimant at the time of the administrative proceeding).   The Sixth Circuit uses "administrative proceeding" and "hearing" interchangeably in its discussion of the applicable law.   *See*, *e.g.*, Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).   Thus, in assessing whether the evidence is new, the issue is whether the medical records existed or were available to Plaintiff at the time of the administrative hearing.   Evidence is "material" only if there is "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence."   Ferguson, 628 F.3d at 276; Foster, 279 F.3d at 357; Sizemore v. Sec'y of Health & Hum. Servs., 865 F.2d 709, 711 (6th Cir. 1988).   "Good cause" is demonstrated by showing "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."   Foster, 279 F.3d at 357.

16

Looking to Plaintiff's proffered documents, there is not sufficient reason to warrant a sentence six remand.   The documents are not "new", as the payment records existed for years prior to the administrative hearing.   All of the documents are dated in 2011 (DN 13-1), while the second administrative hearing was conducted June 17, 2020 (Tr. 16, 38-40).   The documents are not "material" as there is not a *reasonable probability* that the Commissioner would have reached a different disposition.   These documents do not dispute the total earnings that Plaintiff received throughout her employment, only that the amounts vary month-to-month with some not quite reaching $1,000 individually, when factoring in different pay periods (DN 13-1).   Finally, the Court is not persuaded by Plaintiff justification for "good cause."   While the Court understands that counsel may not be able to prepare for every possible contingency, a justification that "counsel did not anticipate the finding based on the amount of income and the varying number of pay period per month" does not pass muster (DN 13, p. 9).   The Sixth Circuit "takes 'a harder line on the good cause test,' requiring . . . Plaintiff [to] 'give a valid reason for [her] failure to obtain evidence prior to the [ALJ's] hearing [or decision]." Miller v. Colvin, 2016 U.S. Dist. LEXIS 59174, at *4 (W.D. Ky. May 3, 2016) (quoting Courter v. Comm'r, 479 F. App'x 713 (6th Cir. 2012); Oliver v. Sec'y, 804 F.2d 964, 966 (6th Cir. 1986)).   The Court acknowledges and appreciates counsel's candor in admitting she simply did not anticipate this dispute, but this does not meet the "harder line" threshold to show "good cause."   As Plaintiff cannot demonstrate a sentence six remand for the ALJ to consider the pay records, the Court will continue and not consider the documents.

Finally, the Court now turns to whether the ALJ erred in determining that Plaintiff's work as a social services aide was substantial gainful activity.   The regulations define substantial gainful activity as work that:

      (a)      Involves doing significant and productive physical or mental duties; and

      (b)      Is done (or intended) for pay or profit.

20 C.F.R. § 404.1510.  A further explanation of what the Commissioner means by substantial gainful activity reads as follows:

> Substantial gainful activity is work activity that is both substantial and gainful:
>
> (a)     *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b)     *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
>
> (c)     *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

      Looking to the present case, the ALJ found that Plaintiff worked as a social services aide from March 2008 until April 2016 (Tr. 28) (citing Tr. 444).   As she worked longer than two years, Plaintiff was able to learn and provide average performance, regardless of whether the work was conducted at SVP level 6 or level 5 (Tr. 29).   Further, the ALJ found that Plaintiff earned $12,002.22 in 2011, while working at New Hart County Health Care Center (Id.) (citing Tr. 372).  Thus, on average, Plaintiff earned $1,000.18 per month in 2011, which is above the threshold to qualify as substantial gainful activity (Id.).

After considering the regulations, Plaintiff's work in 2011 does meet the requirements of substantial gainful activity.  Plaintiff worked at New Hart County Health Care Center, and the vocational expert's undisputed testimony places the work of a social services aide at an SVP of 6, or 5 as Plaintiff performed the work (*see* Tr. 29, 67-68).  She also did receive pay for this work, totaling $12,002.22 in 2011 (Tr. 29).  Looking to POMS DI 10501.015(B), Table 2, for nonblind individuals, the "countable earnings" which would indicate substantial gainful activity in 2011 is more than an average of $1,000.00 per month.

The center of the dispute here, is whether the ALJ erred in averaging the total earnings over 12 months (Tr. 29) and not considering whether an extra pay period would be expected to impact monthly earnings (DN 13, p. 8).  The ALJ correctly followed the regulations.  20 C.F.R. § 1574a(a) provides "If your work as an employee . . . was continuous without significant change in work patterns or earnings, and there has been no change in the substantial gainful activity earning levels, *we will average your earnings over the entire period of work* requiring evaluation to determine if you have done substantial gainful activity."  Id (citing 20 C.F.R. § 1592a) (emphasis added).  Here, Plaintiff has not alleged or challenged the ALJ's finding that the work was continuous or that there was a change in work patterns or earnings.  Thus, the ALJ properly calculated the *average* monthly earnings by considering the whole 12 months of 2011.

As such, the ALJ's determinations about Plaintiff's past relevant work experience is supported by substantial evidence and comports with applicable law.  Plaintiff is awarded no relief under this challenge.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record

that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d

387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this

Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this

Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ

followed the applicable law.   Id.   After reviewing the record, the Court concludes that the ALJ's

determination is supported by substantial evidence in the record and correctly followed the

applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

H. Brent Brennenstuhl
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

August 10, 2022

Copies:         Counsel of Record